## Thomas H. Wickes v. Laura U. Wickes.

1. Decree—*Subsequent Acts of the Parties, When to Be Considered in Construing.*—Where a decree for alimony has been entered by consent of the parties it will be considered as a contract between such parties as well as a decree, and the action taken by the parties in connection therewith after the entry of the decree may be considered in construing it. Such a consent and the decree and the voluntary acts of the parties thereafter must all be construed together.

Construction of a Decree Relating to Alimony.—Appeal from the Circuit Court of Cook County; the Hon. Richard S. Tuthill, Judge, presiding. Heard in this court at the March term, 1901. Reversed. Opinion filed November 21, 1901.

Statement.—This is an appeal from a decree in regard to alimony of the appellee. February 19, 1895, appellee, formerly the wife of appellant, obtained a decree of divorce from him. February 25, 1895, a decree awarding alimony to appellee was rendered by consent of the parties, which was, in substance as follows: That the defendant (appellant here) should convey to the complainant (appellee here) the premises known as 3647 Grand Boulevard, in the city of Chicago, and should pay the interest on $7,000, secured by a mortgage thereon, and the principal at maturity; also, that the defendant should execute and deliver to complainant and her three children, Mrs. Laura Annette Walker, Mrs. Florence L. Ford and Thomas Henry Wickes, Jr., deeds conveying to complainant a life estate, reserving to defendant, should he survive her, a life estate, remainder to said three children in fee, of the premises known as 3645 Grand Boulevard, in said city, etc., and should also pay the interest on the sum of $7.500, secured by mortgage on said premises, and the principal sum so secured at maturity, and all taxes and other governmental charges on said premises, during complainant's life, and keep the said premises, 3645 Grand Boulevard, at all times, during complainant's life, in good and tenantable condition, and insured in a sum not less than $7,500 in insurance companies of good standing,

and, on payment of the taxes or insurance premiums, deliver to complainant the receipts therefor, or duplicates thereof; also that defendant should deliver to complainant two certain paid-up insurance policies, described in the decree, amounting to $11,055, and three certain certificates of insurance issued by fraternal associations, amounting in all to $7,000, and should pay, as the same should fall due, the premiums to accrue on said certificates, and deliver the receipts therefor, or duplicates thereof, to complainant, etc. The fourth clause of the decree provides as follows :

4th. " That in case the gross income derived by complainant from said two houses, Nos. 3645 and 3647 Grand Boulevard, shall, during the minority of said Thomas H. Wickes, Jr., not amount to the sum of two hundred and fifty dollars ($250) per month, the defendant shall pay to the complainant the difference between such gross income and $250 per month; that in case the gross income derived from said two houses (after the said Thomas H. Wickes, Jr., attains his majority) shall not amount to two hundred dollars per month, the defendant shall pay to the complainant the difference between said gross income and said two hundred dollars per month; that as often as such deficiency shall occur, the defendant shall pay on or before the 5th of the month following the month in which such deficiency occurs, the amount of such deficiency so as to make up the gross incomes above referred to; provided, however, that if complainant occupies as her residence either of said houses, the amount of said gross income hereby guaranteed shall be reduced by the sum of $150 per month if she occupies the house numbered 3647 Grand Boulevard, and by the sum of $100 per month if she occupies said house numbered 3645 Grand Boulevard, and that the guaranty of rent above mentioned shall continue at such reduced amount as long as said complainant shall occupy such house and for thirty days after written notice of her intention to leave the same shall have been given defendant; provided, further, that if either of said houses shall be vacant for want of a suitable tenant, and shall be occupied during said vacancy by said complainant and while she is trying in a *bona fide* manner to rent such vacant house, the amount of the guaranteed rent shall not be reduced as aforesaid on account of such occupancy by her; and the diligence required of complainant in endeavoring to rent such house or houses shall be the

placing of the same for rent in the exclusive charge of some reliable real estate and renting agent, satisfactory to the defendant, with full authority to such agent to rent the same to the best advantage, and to deliver immediate possession thereof when rented; of said two hundred and fifty dollars, fifty dollars is for the support and maintenance of said Thomas H. Wickes, Jr. and said complainant shall furnish him a suitable home therefor during his minority," etc.

The 5th clause is as follows:

5th. "That said defendant do also, within ten days from this date, pay to complainant's solicitor seven hundred and fifty dollars ($750) as solicitor's fees and disbursements in this case, and the further sum not to exceed one hundred dollars ($100) to be expended in repairs upon said premises numbered 3647 Grand Boulevard, written bills for such repairs to be furnished defendant."

The foregoing is all of the decree which we deem it necessary to be stated. It is not claimed that appellant has not substantially complied with the decree, except as contended in the present case.

December 10, 1900, appellee filed her petition in the cause, in which, after referring to the alimony decree of February 25, 1895, it is averred that in May, 1895, she placed the houses in the hands of Chandler & Co., as agents; that Thomas H. Wickes, Jr., attained his majority in 1897; that, after the appointment of said agents they stated there was difficulty in procuring a tenant for the premises, number 3647 Grand Boulevard, unless certain repairs were made, to the making of which she objected, and that appellant authorized the making of such repairs at an expense amounting on January 3, 1900, to $752, and that, in April, 1900, said agents, acting under appellant's instructions, made other repairs, to the amount of $173.25, which were grossly excessive in amount, and unnecessary; that said agents have at the request of appellant, withheld from the income aforesaid provided to be paid by said decree, $75 per month for five months and $65 per month for six months, on account of said repairs; and have also, at the instance of appellant, charged appellee commissions for the collection of rentals,

and $56.10 for renting No. 3645 Grand Boulevard. The petition charges that " the said extensive and unnecessary and unusual repairs, as aforesaid, made at the instance and direction of said defendant, are chargeable to him under said decree, and under the facts of the case," etc. The defendant answered the petition at great length, denying, among other things, that he directed what repairs should be made on No. 3647, and averring that he left the matter of repairs to the discretion of the agents selected by appellee, and denying his liability. The court, January 2, 1901, decreed for the appellee, finding that $869.05 had been deducted from rentals, and ordering that appellant, on or before January 5, 1901, should pay that amount to appellee, and that thereafter, all rents accruing from the premises numbers 3645 and 3647, except usual commissions of the agents, should be paid to appellee till such time as the sum of gross rentals should equal $200 per month, and that appellant pay to complainant $225, as and for the fee of her solicitor.

The decree of February 25, 1895, provided for the payment of the fee of appellee's solicitor in case she had to apply to the court by reason of appellant's default.

Runnells & Burry, attorneys for appellant.

John C. Black, attorney for appellee; W. P. Black, of counsel.

Mr. Justice Adams delivered the opinion of the court.

The question presented by the record is, who is liable for the repairs of the premises number 3647 Grand Boulevard, appellant or appellee? If appellant is liable, then it must be on one of two grounds: either that he is liable by the terms of the decree of February 19, 1895, or by reason of his acts in relation to the premises.

The decree in respect to the premises 3647, provides for the conveyance thereof to appellee by a good and sufficient deed, and the discharge by appellant of an incumbrance thereon, amounting to $7,000 and interest. The convey-

ance directed is in fee simple. The only provision in regard to repairs of number 3647 is contained in the 5th clause of the decree, which is that the defendant (appellant) shall pay to complainant's solicitor $750 as solicitor's fees, etc., "and the further sum, not to exceed one hundred dollars, to be expended on repairs upon said premises, numbered 3647 Grand Boulevard."

The second clause of the decree provides, in respect to the premises 3645 Grand Boulevard, "that defendant also pay all taxes and other governmental charges levied or to be levied upon said premises, No. 3645 Grand Boulevard, during the life of complainant; that defendant also keep said premises, at all times, in good and tenantable condition, and insured in a sum of not less than seventy-five hundred dollars."

Clause 4th of the decree provides "that in case the gross income derived from said two houses, after the said Thomas H. Wickes, Jr., attains his majority, shall not amount to two hundred dollars per month, the defendant shall pay to the complainant the difference between said gross income and said two hundred dollars per month."

We have, then, a decree expressly limiting appellant's liability for repairs of the premises, number 3647, to the sum of $100, which sum he has paid, and no provision requiring him to pay the taxes levied or to be levied on said premises; requiring him to pay taxes levied and to be levied on the premises number 3645, during appellee's life, and to keep said premises, during her life, in good and tenantable condition, to do which involves the making necessary repairs, and, lastly, that if the gross income from the two houses shall be less than $200 per month, requiring appellant to pay the difference between such gross income and $200 per month. The fact that the decree contains no provision for the payment by appellant for repairs of number 3647 in excess of the sum of $100, and limits his liability to that amount, while requiring payment by appellant for such repairs as will be necessary to keep number 3645 in good and tenantable condition, is wholly inconsistent with the view that appellant is, by the decree, liable for repairs of the premises number 3647.

Wickes v. Wickes.

The subject of repairs of both the houses was, as is manifest by the decree, in the minds of the parties who consented to it, and the decree was doubtless carefully scrutinized by their solicitors, respectively, and had it been intended that appellant should pay for the necessary repairs of the premises, number 3647, it is to be presumed that the decree would have contained a provision to that effect, as it does in regard to the premises number 3645. The reason for the distinction made by the decree between the two houses, in the matter of repairs, is obvious. The premises number 3647 were to be conveyed to appellee in fee. Therefore she could alienate them, if she so desired, in which case the appellant should not be required to keep them in repair; but the decree as to the premises 3645 is that they shall . be conveyed to appellee for her life, remainder to the children, and that the deed conveying them shall contain a provision that, in the event of the death of all the children without issue, the defendant surviving them, the premises shall revert to him. The provision in the decree that if the gross income from the two houses shall not amount to $200 per month the appellant shall pay to appellee the difference between said gross income and $200 per month, also indicates clearly, as we think, that appellee was to receive only the gross income, subject to appellant's liability to keep number 3645 in good and tenantable condition during appellee's life. The manifest object of the provision is to secure for appellee a gross income from the two houses of $200 per month. If the houses rent for less than that sum, appellant is required to pay the difference between the sum they rent for and $200 per month. The decree, presumably drafted by appellee's counsel, refers to the provision as "the guarantee of the gross rentals of said premises, in the said original decree mentioned, by the said defendant, at the sum of two hundred dollars per month." The decree evidently contemplates a renting of the houses, and the gross income from leased premises is the amount of rent reserved by the lease and paid by the tenant. Appellant's counsel contend that there is a distinction in meaning

between the phrases, "gross income" and "gross rentals." There is no such distinction in the phrases as applied to the facts of the case, as they, themselves, have illustrated by using, as above shown, the phrase "gross rentals" as identical in meaning with "gross income." In Webster's dictionary the word "gross" is defined: "Whole; entire; total; without deduction; as, the gross sum, or gross amount; gross weight, opposed to net." So that it is not the net rent or income of the premises 3647 which appellee is, by the decree, to receive, but the gross rent, without deduction for repairs, or other expenses.

We think it clear that, by the terms of the decree, if appellant kept number 3645 in good and tenantable condition, and the gross rental of both places equaled $200 per month, he would owe appellee nothing, even though she had expended money for repairs of number 3647. It appears from a letter of appellee, of date October 18, 1895, to Rhodes Bros. & Co., who were then her agents, that it was her understanding that appellant was not required, by the decree, to keep in repair the premises 3647. In that letter she writes:

"While the property remains in your hands, as agents, you may have any usual and necessary repairs made to the house No. 3647, without, however, waiving any of the covenants of the lease. By this I mean, that you may make such repairs as are usually made by the landlord in the ordinary course of renting houses. The matter of all ordinary and current repairs is left to your discretion, with the understanding, of course, that I desire the repair account of this house to be kept as low as possible, consistent with its proper renting. * * * Mr. T. H. Wickes is required to pay the repairs to No. 3645, and you will look to him for all directions concerning repairs made on that house. "

By this letter appellee authorized repairs on No. 3647, and expressed a desire that the account for the same should be kept as low as possible, which was to her interest if she was liable for the repairs, but which did not concern her if appellant was liable for them; and as to the repairs of the premises 3645, she referred the agents to appellant. In

Wickes v. Wickes.

another letter from appellee to the same agents, of date August 24, 1897, she impliedly admits that repairs of the premises No. 3647 were to be made at her expense. The next question to be considered is, whether appellant, by his acts, or otherwise, has made himself exclusively liable for the cost of the repairs of the premises number 3647. Subsequently to the writing of the letters last mentioned, it would seem that a dispute arose between the parties as to who should pay for the repairs of No. 3647, and the following letter, signed by the attorneys, respectively, for the parties, was sent to the agents:

"CHICAGO, September 28, 1897. MESSRS. RHODES BROS. & Co., City.

GENTLEMEN : We understand that you have a tenant for No. 3647 Grand Boulevard. It is desirable that this property should be rented. We also understand that in your opinion considerable repairs must be put upon the house before the prospective tenant or any other good tenant will take it, and that the repairs are such as are usually put upon houses when about to be rented in Chicago. Some dispute has arisen between Mr. T. H. Wickes and Mrs. Laura U. Wickes as to which of them should bear the cost of repairs to this house, and that dispute will have to be settled in court. Meantime, in order not to lose the tenant, we authorize you to proceed at once to make such repairs upon the house as in your opinion are necessary and usual on renting such houses, asking you, however, to be economical in the matter and keep the repair account as low as possible under the circumstances. Then when the court decides which of the parties is to pay the cost of the repairs, the matter will be disposed of. You have advised us that the repairs will cost upward of $350. If possible, we would like you to reduce this amount, but if you do not find it possible to do so, you may make the repairs you now have in mind in making that estimate."

In the year 1899 the following stipulation was made between the parties, and in the years 1899 and 1900, the following correspondence occurred :

"IN THE CIRCUIT COURT OF COOK COUNTY.

LAURA U. WICKES,   ) Gen. No. 135,757.
     v.        )  In Chancery.
THOMAS I. WICKES. )

Stipulation entered this 26th day of April, A. D. 1899,

by and between Laura U. Wickes, by John C. Black, her solicitor, and Thomas H. Wickes, by Runnells & Burry, his solicitors.

WHEREAS, S. K. Martin, Jr., a prospective tenant, has made an offer of $1,000 rent for the house known as No. 3647 Grand Boulevard, Chicago, Illinois, and it is desirable that such tenant be secured, and said S. K. Martin has demanded that certain repairs should be made on said house before he will consummate a lease, and

WHEREAS, a disagreement has arisen between Laura U. Wickes and Thomas H. Wickes as to who should bear the expense of such repairs under the decree of alimony entered in the above entitled cause on February 19, 1895, it is hereby agreed by and between the parties hereto and their respective solicitors, that for the purpose of securing said proposed tenant, Chandler & Co., the renting agents for said house, be authorized to make the necessary repairs, but that this authorization shall not be taken as a construction of clause 4 of the decree of alimony heretofore entered in the above entitled cause on February 19, 1895, and is without prejudice to any order of the court as to who should pay therefor.

LAURA U. WICKES,<br>
By John C. Black, Sol. & Atty.<br>
THOMAS H. WICKES,<br>
By Runnells & Burry, his solicitors."

"JULY 20, 1899.

MESSRS. CHANDLER & Co., 84 Washington St., Chicago:

GENTLEMEN: We have your favor of the 6th instant about 3645 Grand Boulevard, together with account for $5.48, for which we herewith enclose Mr. Wickes' check. If any part of this statement is properly chargeable against 3647, please charge it so on your accounts in order that when rent from that property begins to come in the proper deduction for expenses may be made.

We understand you saw Mr. Walden of Mr. Wickes' office yesterday, and that you said you thought certain repairs ought to be made upon these two houses in order to put them in proper shape to show prospective tenants. We now authorize you, on behalf of Mr. Wickes, to make such repairs upon No. 3645, asking you to use proper economy in so doing.

Repairs on No. 3647 are to be borne by Mrs. Wickes or to be paid out of the rental coming from that property. The ruling of the court is that all proper and usual repairs

Wickes v. Wickes.

should be made upon that property, and such repairs charged to the income thereof. We, however, request you now to make such repairs as you think should be at present made, in the usual course of caring for property, and to rent it. While these repairs must be paid from the rental of the property, yet, of course, it is not desired that you should expend your own money on this, and we will repay you at once any moneys you may so expend, and look to the income of the property for reimbursement. In making repairs on No. 3647, we again ask you to use proper economy and simply make such repairs as are usually made under like circumstances.

In this connection we refer to your letter to us of May 9th as indicating the repairs which should be made, and take it that the letter indicates the repairs which should be made in a proper and conservative management of the property. If we are correct in this, we think the repairs should be made, and we will acknowledge that letter in this, leaving it to you to say when they should be made.

We write this letter in view of what you said to Mr. Walden yesterday, that you thought certain repairs ought to be made by the latter part of August, and that you thought such repairs should be made before showing the house to prospective tenants in order to make it more attractive. We also understand from Mr. Walden that if this arrangement is made you will continue the agency of the property.

Very truly yours,

Wm. Burry."

"August 1, 1899.

Messrs. Chandler & Co., 84 Washington street, City.

Gentlemen: We are in receipt of your favor of July 31, enclosing estimate of $77.45 repairs to be put upon 3645 Grand Boulevard, and $43.61 to be put upon 3647 Grand Boulevard. On behalf of Mr. Wickes we have to say that these repairs seem reasonable, and we are in accord with your suggestions to make them, and the time in which they should be made, and they may be made under the assurances of our former letter to you on this subject. We return the estimates to you herewith.

Very respectfully,

Enc.    Wm. Burry."

" October 10, 1899.

Chandler & Co.

Gentlemen: I understand the repairs indicated on

attached memorandum as needed by 3647 Grand Boulevard are necessary in order to secure a tenant, and are such as should be made in the usual course of handling property. If that is the case, and you can secure Mr. Cooke as a tenant on a three-year lease, the repairs should be made as per authority contained in Mr. Burry's letter to you dated July 30th, 1899.                                    Yours truly,

                                              T. H. Wickes."

"Chicago, Oct. 24th, 1899.

Wm. Burry, Esq., c. o. Runnells & Burry, Chicago.

Dear Sir: Concerning the lease of No. 3647 Grand Boulevard, I have your favor of yesterday. I have advised Mrs. Wickes to execute the lease prepared by Chandler & Co. for the same. I am advised that the total amount of 'repairs' necessary to be made to procure the execution of this proposed lease to Mr. Cook will be between $600 and $700. Of this sum nearly $300 is for betterments, viz.: certain hardwood floors and decorating. I understand Mr. Wickes has ordered the betterments made, and under no circumstances do I think that Mrs. Wickes should be called upon to pay for them.

The question of the repairs is one which we have heretofore agreed to submit to the court, and that matter will come up later.

                              Yours very respectfully,
                                        John C. Black,
                                    Attorney for Mrs. Wickes."

"Chicago, Nov. 7, 1899.

Hon. John C. Black, 423 Monadnock Block, City.

Dear Sir: Your letter of October 24 concerning No. 3647 Grand Boulevard was received, and an answer at the time was overlooked. Mr. Wickes has not ordered anything, either of repairs or betterment, done to the house, but has left it to the real estate agent to determine upon the proper management of the property. I suppose the question of who shall ultimately pay the bills may be brought before the court, but I understand that the court passed upon the matter the last time we were before the court on the same subject.

                              Very truly yours,
                                        Wm. Burry."

"Chicago, January 3, 1900.

Mrs. L. U. Wickes, New York City.

Dear Madam: In order to make the house 3647 Grand

Boulevard, fit and acceptable for occupancy, it has been necessary to expend the sum of $752.72 for repairs, as per enclosed receipted bills. This sum has been advanced by Mr. Wickes to the agents in charge of the property. Only such repairs have been made as were considered necessary by the agents to secure a tenant, and such as were deemed needful in the ordinary course of caring for and renting similar property. These repairs, of course, are properly chargeable to you as owner of the property, and in order to render the payment for the same as little burdensome as possible, I am directed to deduct $75 per month from the usual remittance of $200 until the amount advanced by Mr. Wickes is paid. I therefore enclose check for $125 herewith, together with the usual receipts for insurance premiums.

Yours respectfully,

H. P. Walden."

"Chicago, Friday, 4–13–00.

Mr. Francis Walker, care of Chandler & Co.,

110 Dearborn St., Chicago.

Dear Sir: Referring to the matter of repairs to plumbing at 3647 Grand Boulevard, inasmuch as it is absolutely necessary to have this work done at once in order to put the plumbing in sanitary condition, I will advance you the money to do the work, the same as I did in the matter of repairs a short time ago. I had E. Moston, a plumber at 123 Monroe street, make a bid on the job, and his figure was $165; I would therefore thank you to let him do the work.

Yours truly,

T. H. Wickes."

"Chandler & Co.

Chicago, April 14, 1900.

Mr. Thomas Wickes, Pullman Bldg., City.

Dear Sir: We are in receipt of your favor of the 13th inst., and as instructed, have let the plumbing work for 3647 Grand Boulevard to E. Moston, as per his estimates to you for $165.

Yours truly,

Chandler & Co."

"Chandler & Co.

Chicago, June 4, 1900.

Mr. Robt. P. Walker, care Chandler & Co., Chicago.

Dear Sir: As agents having charge of the renting of the house, 3645 Grand Boulevard, which is owned by me,

but in which property Mrs. L. U. Wickes has a life interest, your firm is authorized to lease the property to the best advantage; and as an opportunity now offers to lease the house for a term of five years, I think it advisable that you do so. The rental each month should be remitted to Mrs. Wickes, less your usual commission for collecting same. As owner of the house, all repairs are chargeable to me, and you are hereby authorized to have made, at as low cost as possible, the repairs, including hardwood floors, necessary to make the place acceptable to the tenant, as per your conversation with Mr. Walden.

The adjoining house, No. 3647, as you probably know, is Mrs. Wickes' sole property, and she is responsible for repairs to same. I may add by way of further explanation, that the rentals of both houses apply toward a stipulated amount, payable each month by me to Mrs. Wickes; hence it is to my advantage that they be rented and be producing the best income obtainable.

                    Yours truly,

                              T. H. WICKES."

The letter of September 28, 1897, signed by the attorneys for appellant and appellee, respectively, and the stipulation of April 26, 1899, signed by the parties by their attorneys, are conclusive as to two things, namely, that the appellee agreed that Chandler & Co. should make such repairs of the premises number 3647 as were necessary in order to secure a tenant, and that there was a dispute between them as to who should pay for the repairs. The negotiation with Martin, mentioned as a prospective tenant in the stipulation of April 26, 1899, fell through, and he was not secured as a tenant, but that circumstance does not affect the agreement of the parties that Chandler & Co. should have necessary repairs made for the purpose of securing a tenant. The substance of the matter is, that, for the purpose of securing a tenant, it was necessary that repairs should be made, and appellee, by the letter and stipulation referred to, authorized her agents to make them, leaving it to her agents to determine what repairs were necessary.

The letter of July 20, 1899, from appellant's attorneys, in which they say, referring to a ruling hereinafter men·

Wickes v. Wickes.

tioned—"Repairs on No. 3647 are to be borne by Mrs. Wickes, or to be paid out of the rental coming from that property, and such repairs charged to the income thereof. We, however, request you now to make such repairs as you think should be at present made, in the usual course of caring for property, and to rent it,"—was strictly in accordance with what had been agreed between the parties by the stipulation of September 26, 1899. October 24, 1899, three months after the last mentioned letter was written, appellee's attorney wrote to appellant's attorney a letter in which he says:

" The question of the repairs is one which we have heretofore agreed to submit to the court, and that matter will come up later."

Mrs. Wickes testified in her own behalf, that she did not authorize the repairs in question, and did not consider them necessary; but, by the stipulation of September 26th, she authorized Chandler & Co., her agents, to make necessary repairs, leaving it to them to decide what repairs were necessary, and Mr. Robert P. Walker, of the firm of Chandler & Co., who was the agent on whom appellee especially relied, as is shown by the record, made an affidavit in which he states that he inspected the premises, No. 3647, which were vacant, and found them very much in need of repairs; that the negotiations to rent the premises to Martin fell through, and, subsequently, they had negotiations with Charles Cook about renting the premises to him, and that, in order to rent to him, it was necessary to make repairs amounting to $752.72; also, that Cook only agreed to rent the house on the promise of the agents to make the plumbing good if it proved defective; that they rented the house to Cook, and, in pursuance of their agreement, subsequently made repairs of the plumbing at a cost of $165, being in all $917.70 for repairs, and that all repairs made were necessary.

In 1897 appellee applied to the court, Judge Dunne presiding, for relief against an alleged default of appellant under the decree of February 25, 1895, on which applica-

tion an order was made, which appellant's counsel contend is binding on appellee as an adjudication of the question of liability for repairs under the decree. We do not deem it necessary to pass on that contention. The decree will be reversed.